The fourth district appellate court of the state of Illinois has now convened. The Honorable James A. Kinect presiding. Our first case of the afternoon is, and I'm not sure of the pronunciation, Kallal et al versus Lyons and the Illini Medical Associates, etc. 420-0319. Counsel for the appellant, would you state your name for the record? James P. Leonard for the Kallals. Kallals, is that correct? Thank you. And for the appellee? Melinda Colross on behalf of all of the appellees. Thank you. You may proceed. May it please the court, Ms. Colross. I represent the Kallals, the parents of a minor child, Brooke Kallal, in a personal injury case pending in Jersey County. The parents have filed that action as the next friends of the minor child. They also have filed their own Family Expense Leave Act claim. In the trial court, after the close of plaintiff's discovery, the defendants, the appellees, filed a motion for Rule 215 examination of the minor child, as well as the parents. It is the position of the appellants that the court did not have the jurisdiction and abuses discretion in ordering the parents to undergo a genetic testing, which we'll talk a little bit more about in a minute, and also that it abuses discretion in ordering the minor child to undergo the testing based upon the contents of the file. I probably had a partner once who told me I could screw up a rear-end collision and end up in the Supreme Court, and I may have done the same thing here. I apologize if my briefs were overlong. The basic issue in this case is whether the trial court, under Rule 215, with regard to the physical examination of a party, had the power to order the parents to undergo a physical examination. Rule 215, as amended, creates two classes of persons who the court can order to be examined. Those would be a party who has placed his or her physical condition in controversy, and a person under the control of a party who has placed their physical condition at controversy, and the medical condition at issue in this lawsuit. Rule 215 is pretty clear as to who the court can order to undergo an examination. Here, the plaintiffs, in pursuing the personal injury claim for the minor child as next friends, are not parties in the traditional sense to the lawsuit. They are representative parties. The law is very clear, and I've cited the cases to the court that state that it's the Rosenbach versus Six Flags case and the Clark case that in pursuing a claim on behalf of your minor child, a person who is under a disability and cannot pursue the claim themselves, that you are acting as an agent of the court, and that you are not the true party in interest. We would take the position, as we did in the trial court, that the court simply cannot order the parents to undergo this physical testing, whether it would have been genetic testing or simple blood testing or any other kind of testing, whether they wanted to send them to a chiropractor to be examined. Their physical condition is not in controversy in this case. Mr. Leonard, I have a question I'd like to raise. Yes, your honor. Is my understanding correct that the defendants have an expert who has an opinion that is communicated to you folks that the child's difficulties, physical and mental difficulties, likely have a substantial genetic cost? They have produced an expert. I've produced the report of an expert, an affidavit. Here's my question then. Yes. If they have an expert who has that opinion, I'm assuming it's at least possible that the child's physical and mental difficulties are based upon the genetic costs. Is it not? You're asking me if it's possible? Isn't that at least possible? What isn't possible, your honor? Well, but you have an expert who's actually reached this opinion. I suppose my question then is this. If there is any basis, and I believe there clearly is some basis to believe, that the child's mental and physical impairments and difficulties have a substantial genetic cause as opposed to the cause that you've alleged, which is medical malpractice, how and when would that alternative cause, the substantial genetic cause, be ascertained? How would this be done? Well, your honor, there are a number of cases. This is obviously an evolving technology and evolving science. We've discussed in the brief several cases. I'm from Illinois. This appears to be a case of first impression in Illinois. You can see as time has gone on that these cases have developed. In our briefs, we discussed the Fisher versus Winding Rivers case, which is out of a United States district court in Oregon. There, the defendants were raising the same argument that it was a genetic issue with the child. They sought this whole exome sequencing testing, WAS testing, from the child alone. Now, if they were seeking the genetic testing of the child alone, I might have a more difficult problem, but they are not. They are seeking to get a blood draw from the parents. Well, stopping right there, are you suggesting they couldn't obtain the blood draw from the child? No, your honor. I believe I've conceded that in my brief. You just mentioned some hesitancy about it. Well, because as we get into this, their expert, Dr. Raff, who you've mentioned, says that the optimal testing requires that both parents and the child be tested. Could the court order the minor child to undergo the WAS testing? Yes, the court could if it was appropriate. We would take the position that since the court can't order the parents to undergo the testing, why have the child tested? What do you accomplish except to create without, and Ms. Calrose will disagree with me, I'm sure, without all of the genetic information, then it's a shot in the dark. Let me ask this question. Would you agree that it would be wrong to have the defendants held liable for claims of medical malpractice for the child's condition if in fact there was a substantial genetic cause for those conditions? Your honor, I don't think that's the question here. I think the question here is... They may not be the question here, but it's the question I'm asking you. I think that it would not be wrong for the defendants to be held responsible if a jury were to determine, based upon admissible evidence and appropriate testing, that the defendants were responsible. No, I don't think that would be wrong. Even if we had, assuming it could be pursued, expert testimony at least contradicting that to say, wait, I disagree, there's a substantial genetic cause for these injuries the child has suffered, not due to any medical malpractice? But your honor, what if they had an expert, and this is absurd, I recognize it, who said that my genetics could prove that this child had a genetic defect as opposed to an anoxic hypoxic injury? Could you order me to undergo the testing? I'm just trying to understand, counsel, the basics. It seems to me that there's a real problem if, in this lawsuit, there's an alternative cause for the damages, you say, this child suffered that the defendants had no connection with, the alternative cause. If that were the case, the defendant shouldn't be required to pay anything, but your honor, you're discussing the Harris versus Mercy case, which is discussed in the briefs, where a defendant did put on an expert that said, based upon his opinion and his review of the medical records, that the injury was the result of a genetic defect and not a hypoxic anoxic injury. I'm not saying that the defendant's expert can't testify. What I'm saying is that the trial court and this court and the Illinois Supreme Court don't have the power as non-parties to order them to undergo testing under Rule 215. It's just that simple. Well, what alternative would you suggest or suggest to the court, assuming we would agree with you that the parent shouldn't be ordered to undergo this under 215, what alternative exists to find out whether or not there's a substantial genetic cause to the child's injuries? Well, your honor, there's a couple of things. Number one is that genetic testing was already done at Children's Hospital on the minor child to determine if there was a genetic factor to the testing and it came back negative. That's number one. Number two, I don't understand. When you say there was genetic testing done, what do you mean by that? What was tested? They ran the standard acceptable genetic panel that was in existence at the time she was born and treated. What the defendants are proposing is something new and novel, this whole exome testing that tests over 20,000 genes in the human genetic makeup. But the genetic testing that's already occurred hasn't addressed the claim that she might be suffering from this genetic cause, namely the WES. WES is the testing, it's whole exome sequencing. The standard testing for genetic defects, genetic explanations for the child's injuries was tested and is part of the record in this case and has been provided to the defendant. What they're proposing is testing much more extensive of not only the child, which the court would find that they have an appropriate reason to do that, would be within the power because the child's medical condition is in controversy. But there are limits on the court and on the discovery process. Can we test anyone? Going back to my question, is there some alternative, less invasive of the parents of the 215 that could resolve the question of whether this is due to the WES? Your Honor, I am not a geneticist. I'm a lawyer. I like to think I'm smarter than doctors, but I don't know. That hasn't been proposed. What we know is that the testing that the treaters recommended was done and that the defendants want to do something more, but it does not involve only the minor child, it involves the parents. Okay. You may proceed. Yes. Sorry, I kind of lost my train of thought. But if you look at the cases that are in the briefs, there's Fisher versus Winding Waters, which is out of the United States District Court in Oregon, where the defendants there sought this WES testing, but sought it only of the minor child, did not seek it of the parents. And in that case, the court denied it. And it's kind of an interesting discussion on whether or not the court would have the power to order the parents to undergo blood testing and pointed out that, in general, you do not under Federal Rule 35, unless that person, just as in Illinois, has placed a medical condition in controversy. And they discussed it in many different contexts, both criminal and immigration law and different things. The other cases that, and this is developing, the Myers by Myers versus Intel case is interesting. There, the defendants, Intel, were accused of causing a defect in a child because of toxic chemical exposure. And there they sought the testing of, well, they sought the parents' medical records. And the father, and that's an interesting facet of that case, they sought the testing of the mother and the father who was not a party at all. And the court said, well, we certainly can't order the father who's not a party at all to undergo any genetic testing because he's not a party. We just can't pick people off the street for testing. They denied it as to the mother, because they said without the mother and father, the testing would be inconclusive, which poses an interesting question for me as an attorney. What do we do with these types of cases? Do we file them through a bank only through a bank? Do we have one parent file and not both parents? In essence, what we have here is a, is a nuclear family pursuing a claim for a minor child. And are we going to penalize a nuclear family for seeking recourse when if they only one parent sought recovery, they couldn't do the testing or if a bank was placed in charge of this case that they couldn't seek testing? I guess what I'm arguing for is, is substance over form. Let me ask again, we're talking about two different sets of orders here, the trial court order. The first was for Krista, the child to submit to, no, excuse me, Brooke is the child, right? Yes, okay. Brooke to submit to blood draws. And also then for the parents, Krista and Skyler submit to blood draws. I understand your argument about the parents not being parties of 215 limitation, but what's the argument on Brooke? Brooke is clearly the party here. Why? And isn't this a matter addressed to the sound discretion of the trial court, whether to order to undergo as a party of what test? Yes, your honor. I would agree with you that it is within the court's power to order Brooke, the minor child to undergo the test. And I would agree with you that it is a matter of discretion. What I would tell you, pardon me, the court did order Brooke to undergo a test and you're appealing that as well. Yes, I am. Because without the Brooke, the testing, according to the defendant's expert is optimal only if both the parents are tested. Isn't that a matter for the trial court to decide? In other words, are we supposed to second guess the trial court's judgment regarding the child? And maybe the court thought that optimal is one thing, but useful might be another criteria. Wouldn't it be useful to see what the test on Brooke might reveal? I don't believe that if you read the affidavit of the defendant's expert and the geneticist that we supplied an affidavit from, no, I don't believe the science would support that, your honor. Isn't our issue whether the trial court in ordering Brooke to undergo this test abused its discretion? Another way to put it, no reasonable person would order that. And I would argue that no reasonable person would do that based upon the fact that the defendant's expert's own affidavit says that the testing requires the test, both genetic parents to be tested. I understand that you've appealed both, but I guess I'm being presumptuous, but I would suggest that you're more interested in whether the parents have to submit to another blood test or any blood test. Yes, your honor. Or any blood test. Let me ask you a question, and I haven't read any cases on this. Does Dobear apply to discovery issues of this magnitude? Not yet. You're asking me if Dobear is the issue in this appeal? No. I understand it hasn't been tested, and it is an advance in technology and medicine. It is invasive, understood, but what is there to tell us? I understand the purpose of discoveries lead to evidence or what might later become evidence, but why should this be ordered unless there's a Dobear question answer? Well, your honor, we're not there yet. That was the issue. That was the issue in the Harris versus Mercy case. Was there adequate evidence to submit to the jury? I don't believe that I would have standing to attack the concept of the testing, but I believe that under the circumstance of this case, it's in it with regard to the parents. It's not allowed him with regard to the child. It would become irrelevant. You earlier made the suggestion that, and I take it this would be available to any plaintiff to nominate a bank to serve as the representative of the child. Is that correct? That's correct, your honor. If that happened, what would we say? That the Supreme Court rule clearly doesn't apply? Yes, that's exactly what we would say. That's why I argued for substance over form. What you'd be telling is plaintiff's counsel all across the state never to allow the plaintiffs to be the next friends. Always appoint a institutional guardian and that you have to turn over the control of your child's life to a bank. That's what you'd be saying. If the parents, if this appeal will open all kinds of questions about whether I have a conflict, whether the parents have a conflict, what do we do when we go back to the trial court? If there is a substitution of parties, what happens? What if one parent dismisses their claim? What do we do? The simple answer is that the court didn't have the authority to order the parents to undergo testing when their physical condition was not an issue. Thank you. You concluded your argument? My time went off, your honor. Thank you. I didn't notice that. Thank you. You'll have more time on rebuttal. Counsel, Ms. Colross? May it please the court, counsel Melinda Colross on behalf of all of the appellees. First off, this is a question about whether the trial court abused its discretion in ordering the testing of the minor plaintiff, Brooke, and her parents. I want to correct a misstatement that's been made. The parents are plaintiffs in this action. They are parties to this action. They did not sue solely in a representative capacity on behalf of their daughter, but they brought their own individual claims under the Family Medical Expense Act. We have cited a case, Burt v. Winona, where the parents had an individual claim, the minor had a claim, and the court did order this Wess testing. I think it may be beneficial in assessing whether the court below acted reasonably, which is all we have to show here. There's no abuse of discretion if the court acted reasonably. The difference between the prior testing, which was called a chromosomal microarray, was it looks to see if the genetic material is missing or incomplete. It's a structural test. The Wess whole exome sequencing tests looks at the content of the pieces of genetic material. It is a substance test, and I'm not saying this based upon my own medical expertise. This is paragraph nine of the expert clinical geneticist that we provided the affidavit to the court, Dr. Rush, and he explains what the chromosomal microarray that was previously performed, the limitations, what it can diagnose and what it can't, what the whole exome sequencing, the Wess test that is being ordered now provides substantive information not available through that other test. We've talked about Wess being a more sophisticated test. They're really complementary. The microarray looks for structural abnormalities in the genetic material. The Wess test looks within for the content to see what is happening there. According to the expert's affidavit, 85% of the known genetic disease-causing variants are within that genetic material. They would be discoverable through Wess, but not discoverable through the microarray. There are some structural problems that would only be diagnosed through the microarray and not the Wess. The most complete picture is provided if you have both. That's really the basis of the trial court's ruling. Krista and Skyler are individual parties to this action, so they are within the purview of Rule 215. Let me ask a question about that. All they would have to do would be to nominate a bank? No, they could bring the daughter's claim through a bank. I don't believe they could bring their daughter's claim through a bank. I understand the family expense claim is important in this context to them, but what if they drop that? They could drop it, but we're looking in retrospect at what was done in the trial court. I understand that, but sometimes cases like this help us understand the future as well. I'm asking, if that claim was dropped and or they either remained as representatives or a bank was in charge, would you concede that there would be no basis to order the blood test of all three of them? No, I would concede that the basis would be lacking under Rule 215. I think it would still be within the inherent authority of the court to order it. Not in every circumstance, but here, where you have the genetic condition, is the central defense issue. The plaintiffs are alleging it was medical malpractice on behalf of the defendants. The defendants are arguing there's a genetic problem here that they are not responsible for. I submit that if the parents were not parties and we were still trying to get them to submit to the test, that it would be within the inherent authority of the trial court to order it. That's not the question for today, but going forward, I think it would be outside the purview of Rule 215, but we don't need to answer those questions today because our motion was brought under Rule 215. The parents are parties. Brooke is a party and the court certainly, the trial court, was within its discretion. There are cases on both sides of this issue, cases where West testing has been ordered, where it's been refused. That's just a battle of the experts. We can't say that the trial court here abused its discretion and let me just point out, when the court granted the original motion to compel, there were no counter-affidavits. There was no contrary evidence. The defense submitted the medical records where the treating physicians for Brooke suspected a genetic cause for her difficulties. That's why they ordered the microarray. There's notes in the medical records talking, this is before a lawsuit was even filed, talking about her physical characteristics, her lab results, a family history of developmental delays, that all pointed in the direction of a genetic basis for some or all of her impairments. So if the more optimal testing had been requested before there was a lawsuit and the treating physician in the hospital performed it, we wouldn't be here today. That's exactly right. That's exactly right. Well, why didn't the treating physicians who already suspected seek to have the optimal testing or to administer it since their suspicion was negated by the original test? I understand you're saying there's a difference between the tests. One is maybe better than the other. Why didn't the treating physicians who had this right in front of them and may have needed that information for treatment purposes, why didn't they get this test? I think the development of genetic testing, WESS, is more common now than previously when the microarray was performed. So it's really just an advance in the medical science. WESS, I don't believe, was unknown at the time, but it was certainly lesser known and lesser used. So the microarray was like a first level, first tier screening approach. They didn't find a problem there, and so they didn't order more. Certainly, if the same situation was presented to treaters now, they might order both and we wouldn't have this issue at all. But at that time, it's already, what, seven years ago or so, they did not order that second level. There was also, unfortunately, an insurance question. They were looking about what insurance would pay for in the testing, and I don't believe at that time that insurance would have paid for the WESS testing. That may have changed also. But you know, when you're seeking medical care, unfortunately, those insurance issues do come into play. So I think they did what was reimbursable by insurance, and they didn't find anything there. But there's been no testimony, there's no evidence to say that the microarray being negative means that there's nothing else to learn here. Nobody disputes that there is more to learn. Mr. Koros, I have a question. Excuse me. Go ahead, Pete. Thank you. Mr. Koros, I'm going to go back to talking about the parents' parties. Pursuant to the rule, did the court find that the physical mental condition of the parents comes into play in this suit? Yes. Yes. The court actually cited in its order, it cited, it found that there was good cause and that the probative value outweighed any risk or potential risk to the patient, and includes not only the child, but the two parents. And I am assuming that that finding was based on the very thorough affidavit provided by the expert, Dr. Raj, and also the arguments made in the briefing, and then the arguments made at the hearing. And again, the court doesn't have to be right. The court just has to be reasonable. There's no abuse of discretion if the court acted reasonably. Pardon me. What's your best argument for their physical mental condition being in play? Exactly what has been discussed here. We have a plaintiff arguing that medical malpractice of the defendants is the cause of these impairments. The defense position, based on the treater's records and all this other information, and their expert witness, who has provided a very thorough affidavit, is that it's not medical malpractice. There's a genetic basis. And we are grossly compromised in our defense if we are prevented from doing the testing that completely answers that question, yes or no. It's exactly what's been discussed. There's a potential alternative cause here, and our hands are being tied in really pursuing that. We could, I guess, just have the experts say, yes, I think there's a genetic basis based on the information I have, but there's more information that could be obtained, and we'd like to obtain that, and we are entitled to obtain that. We can fight about validity and admissibility further down the road, but right now, we're not even able to get the results if the trial court's ruling is not affirmed. And that's really- One question, counsel, I'd like to ask. Mr. Leonard used the term describing your expert's analysis as saying getting the blood test from the parents would lead to optimal results. Is that correct? Yes, that is correct. That's what he said, the expert said? Yes, he said optimal. He clarified the parents are not required, and that's why in some of these other cases, they only sought the minor plaintiff's genetic, the test, you get better results if you have both parents, and some results just from the child. Well, let me ask this question. If you can get some results from the child, and the trial court has ordered the child to be tested here, would it be possible that one of those results would be that your expert would conclude, well, I'm satisfied that WES is no longer involved in this case? I'm not certain of the answer to that. Let me give just a little more explanation. By way of explaining, in other words, the optimal result would be if you got the parents and the child tested, but would there be meaningful results? Would there be a result that could further inform the trial court on the issue of whether, for instance, the parents need to be tested based upon the blood test and the follow-up test of the child as a first step? Yes, we could absolutely get meaningful results from just the child. Would one of the meaningful results possibly be to negate the possibility of WES? Not negate the possibility of it, because this is a diagnostic tool. It is possible that Brook could have a genetic issue that the WES testing, as good as it is, did not detect. So, it's not an either-or situation. It's more a scale. So, we could get meaningful information just from testing Brook. We get better results, more accurate, complete results from testing both the biological parents as well. But if all of that turned out negative, it would not 100% exclude the potential of an undiagnosed genetic problem. But if you get a positive result, if we got a positive result from Brook that she has a urea cycle disorder, I think that could be ascertained without the parents' genetic material, but more likely to be determined with that genetic material. The reason why is this is a situation where the parent's genetic material helps explain the variances that are identified. So, for example, if the minor child has a variance and both of the plaintiff parents have a variance and the plaintiff parents don't have any of these abnormalities, then that variance would likely be excluded as the cause of Brook's impairment. This is not just a benefit to the defense. As some of the cases talk about, it's actually potentially beneficial to the plaintiff as well who can use these results to try and refute the assertion that the genetic basis for the impairments exists. This is just knowledge gathering. This is not just something that will only help the defendants and couldn't possibly assist the plaintiffs. I have another question, counsel. If blood testing on the child were to take place for purposes of the WES testing, how long would that take to be done and get results? I am not certain. I don't believe that information is in the record. The order talks about the they send a report to the expert and the expert sends it to both sets of counsel, but there is nothing in the record that says Baylor takes a week, a month, six months. So, unfortunately, I don't know the answer to that. Normally, blood testing, even for DNA, if a laboratory works on it, shouldn't take that long, should it? I would be guessing because I don't know how. I think DNA is so easy, like for paternity now, that's super quick. I don't know. I think WES is more involved than that. The reason I ask is this. Given the delicacy of the issue in front of us, why shouldn't we simply say, let's have the child tested, about which there can be no dispute, it seems to me. The child is clearly a party. Have the child tested and then have those test results submitted to the defense expert and to the plaintiffs as well and see how, if at all, that would change what the defense expert is suggesting needs to be done. You could make that ruling. No one suggested that, I suspect, to the trial judge. It was not suggested below. Again, with the abuse of discretion standard, to find that the judge abused its discretion for not pursuing an alternative that the plaintiff didn't ask for and that the defense didn't ask for, I just don't think that that would be appropriate. The trial court acted reasonably on the record before it, the evidence, the arguments, and the case authority before it. I think on this record, that has to be affirmed in total. I think a different case on another day, perhaps that strategy would be the one to use, so I'm not discounting it, but we just do not have an abuse of discretion on this record. Well, let me ask a question. If a bank were the representative, would you have still sought this test? Yes, we would still have sought the test, but I believe the grounds for the motion would have been the trial court's inherent authority and not Rule 215. I didn't state that well. Would you have sought the test for the child, even if you weren't successful getting the parents? Yes, we would have sought it for the child, even if the parents were adopted parents. If it was adoptive parents with no biological connection, then there would be no basis to do that genetic testing. We would have still sought it the minor, but then the parents don't have a connection. What Mr. Leonard said earlier, that anybody is subject to West testing in this situation, that's not true. It's only the biological parents that would provide the need. We understand that that was an exaggeration for Alpha. Let me ask you a question. As we get into advancements of science, do you think there's the possibility that, and I know this wasn't brought up, does Dober apply to discovery, where we're talking about cutting edge medical scientific information, but it does involve an invasion. However modest a blood test invasion is depends upon the view of the eye of the beholder, but it would be different. Does it apply? It could potentially, but here the invasiveness of the test is just the blood draw, which are routinely given for all sorts of testing, not just West testing. I don't think it would apply in this situation, but with regard to other types of testing that are more invasive, something like a spinal tap or something like that, yes, I could see that being a concern. You may proceed. I don't see any questions pending at the moment. Okay. Well, thank you, your honors. So just as a means of wrapping this up, I think you have a good understanding of the abuse of discretion standard as a trial judge, which I believe you've all been formerly, you act on the evidence in front of you and the legal arguments and case authority in front of you. I think judge Meyer acted appropriately in making the order that he did both in the initial order to compel and denying the motion for reconsideration as none of the three bases for the motion for reconsideration were established. There was no new law, no change in the law and the evidence that was brought in on the motion for reconsideration could have been provided to the court prior to its initial ruling. And so based on that and the scientific basis that these tests are not exclusionary, they're complimentary. We submit that the court acted within its discretion and we would ask that its decision be affirmed. Thank you, counsel, Mr. Leonard. Yes, your honor. With regard to the inherent power of a court to order non-parties to undergo physical and examination, I would merely point this court to the decision in Myers versus Myers versus Intel, where the court there said that Intel is unable to cite any case law supporting this inherent power in the context of compelling a non-party who never put his physical condition at issue and over whom the court has no jurisdiction to submit to a blood test. And it's just that simple. With regard to the Family Expense Act that the parents, Illinois has a unique statutory structure, as you all know, that the minor child can't pursue that claim. I'll be honest, if that is the basis for this court's decision to force the parents to submit to medical testing, my guess is they would forego that claim. The bottom line is... Counsel, stop right there for just a moment as, you know, it's any testing, any invasion by the government, which the courts are, is suspect. But at the same time, blood tests, as counsel pointed out, are pretty routine. This isn't a spinal tap. This is a blood test, blood draw. Why... And shouldn't that make a difference in how we perceive it? No, your honor, I don't think it should. We, in this country, have certain inviolable rights, and one of them is the interest in our person. And, you know, to say that the parents' information may contain knowledge, well, if you read their expert's report, he mentions the grandparents, he mentions the uncles and aunts, all of that he would like to explore. Where does it end? On a personal note, this is kind of strange. This week, I was asked to participate in a study with a relative who was found to have a genetic trait. And they have asked my entire generation of my family to participate in testing, simply to try to gather more information about it. And I'll be honest with you, before this case, I would have said, sure, have at it. But where does it end? Where does this information go? How do we put an end to it? What if my insurance company finds out and they decide they're going to change my monthly premiums based upon my predisposition to a certain disease? Rule 215 is very clear. The party, the party must place their physical condition at issue, and that has not happened here. And the trial court never found that these parents had placed their physical condition at issue. Contrary. One other question, counsel. You heard my questions to Ms. Colas. What about having the child tested first, getting results of that, and then further informing the court, and perhaps this court, if there's going to be a further appeal, what steps, if any, might then be shown to be necessary? You say nothing's to be gained, but it seems to me that there's no basis to conclude that, is there? I would think that if that issue was brought up, that we might be having a different argument. As Ms. Colas pointed out, things were still going on in the trial court. I didn't think I could name a new expert. Depositions were still being taken. She says that some of the things I attached to my motion to the court, the depositions didn't exist. The reports didn't exist. Well, the child is clearly a party, and a blood test of the child is minimally invasive. Why shouldn't we go ahead and have the child tested? As long as it's not used as a basis for then requiring the parents to be tested, that would be... Well, it's a step down the road. It is, Your Honor, that is a step down the road. The blood test of the child. I'm thinking, why is that? Because I took their expert at his word that it was less than optimal. That's my only response to that, Your Honor. You may have time to conclude, counsel. We would ask that the court remand this case to the trial court, relieve me of contempt, and that the parents simply are not within the court's jurisdiction under Rule 215 to order them to undergo any medical testing of any kind. We would ask that the trial court be reversed. Thank you, counsel. We'll take this matter under advisement, await the readiness of the next case.